# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FISKER INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 24-11390 (TMH)<br><br>(Jointly Administered)<br><br>**Re: Docket Nos. 110, 111, 112** |

### SUPPLEMENTAL DECLARATION OF JOHN C. DIDONATO AS CHIEF RESTRUCTURING OFFICER OF THE DEBTORS IN SUPPORT OF THE MOTION OF DEBTORS FOR ENTRY OF AN ORDER (I) AUTHORIZING AND APPROVING THE SALE OF CERTAIN OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, (II) AUTHORIZING THE DEBTORS TO ENTER INTO AND PERFORM UNDER THE FLEET SALES AGREEMENT, AND (III) GRANTING RELATED RELIEF

**JOHN C. DIDONATO** declares and says:

1. I submit this supplemental declaration (the "**DiDonato Supplemental Sale Declaration**") on behalf of the Debtors in support of the *Motion of Debtors for Entry of an Order (I) Authorizing and Approving the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Encumbrances, and Interests, (II) Authorizing the Debtors to Enter Into and Perform Under the Fleet Sales Agreement, and (III) Granting Related Relief* (the "**Fleet Sales Motion**") [D.I. 110], filed on July 2, 2024.[2]

2. Contemporaneously with the filing of the Fleet Sales Motion, I submitted the *Declaration of John C. DiDonato as Chief Restructuring Officer of the Debtors in Support of the*

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers or Delaware file numbers, are as follows: Fisker Inc. (0340); Fisker Group Inc. (3342); Fisker TN LLC (6212); Blue Current Holding LLC (6668); Platinum IPR LLC (4839); and Terra Energy Inc. (0739). The address of the debtors' corporate headquarters is 14 Centerpointe Drive, La Palma, CA 90623.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Fleet Sales Motion.

*Motion of Debtors for Entry of an Order (I) Authorizing and Approving the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Encumbrances, and Interests, (II) Authorizing the Debtors to Enter Into and Perform Under the Fleet Sales Agreement, and (III) Granting Related Relief* [D.I. 111] (the "**DiDonato Sale Declaration**"), which is incorporated herein by reference.[3]

3.  Except as otherwise indicated, the facts set forth in this DiDonato Supplemental Sale Declaration are based upon my personal knowledge, my review of the relevant documents, information prepared or provided to me by employees of and professional advisors to the Company, information prepared or provided to me by employees of Huron (the Company's proposed Chief Restructuring Officer and restructuring advisor), or my opinion based upon experience, knowledge, and information concerning the operations of the Debtors. I have reviewed the Fleet Sales Motion, including the Fleet Sales Agreement, or have otherwise had its contents explained to me, and it is my belief that the relief sought therein is necessary to maximize the value of the Debtors' estates. If called upon to testify, I would testify competently to the facts set forth in this DiDonato Supplemental Sale Declaration. I am over the age of 18 years and authorized to submit this DiDonato Supplemental Sale Declaration.

4.  I previously stated in the DiDonato Sale Declaration that the Debtors' ability to continue to fund vital business expenses was dependent on their receipt of cash proceeds under the

---

[3] On July 2, 2024, the Debtors also filed the *Motion of Debtors to Shorten Notice of Motion of Debtors for Entry of an Order (I) Authorizing and Approving the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Encumbrances, and Interests, (II) Authorizing the Debtors to Enter Into and Perform Under the Fleet Sales Agreement, and (III) Granting Related Relief* [D.I. 112] (the "**Motion to Shorten**").

Fleet Sale Agreement by July 12, 2024.[4]  Following the initial hearing on the Motion to Shorten held on July 3, 2024, and subsequent discussions with the U.S. Trustee and other parties in interest, the Debtors revisited their budget with the goal of extending the period in which the Debtors could continue to fund such vital business expenses with unrestricted cash on hand, in an effort to provide as much notice to parties in interest as possible under the circumstances of the Fleet Sales Motion. Accordingly, the Debtors made the decision to defer certain cash disbursements (including the deferral of certain severance payments, certain employee healthcare benefits,[5] and vehicle sale incentive bonuses), while continuing to budget for select necessary cash disbursements, including employee payroll and benefits (collectively, "**Payroll**") for the Debtors' existing workforce. In addition, notably, on July 8, 2024, Henrik Fisker, Fisker's Chief Executive Officer, and Dr. Geeta Gupta-Fisker, Fisker's Chief Financial Officer and Chief Operating Officer, each voluntarily reduced their annual salary to $1, effective immediately, to support the Debtors' needs at this time, and in the best interest of all stakeholders. Further, the Debtors continue to collect receipts from prior vehicle auctions, interest on bank accounts, and other miscellaneous sources, including approximately $345,000 in cash receipts that the Debtors unexpectedly received the week ending Friday, July 5, 2024.

5.    Details regarding the Debtors' unrestricted cash balance and Payroll are set forth in **Exhibit A** attached hereto.  In sum,

    a. On July 15 and 17, 2024, the Debtors are required to fund Payroll for the accrued but unpaid pay period from June 29, 2024 to July 12, 2024 (the "**July 12 Payroll**")

---

[4] *See* Decl. ¶ 22 ("Critically, if the Proposed Order is not timely entered such that the Debtors are in a position to commence, and receive payment for, delivery of Sale Vehicles on July 12, 2024 (at the latest)—as contemplated under the Fleet Sales Agreement—the Debtors will be unable to fund vital business expenses (e.g., payroll, taxes, software provider costs, etc.) necessary to effectuate an orderly liquidation.").

[5] For the avoidance of doubt, the Debtors do not anticipate that any employee's healthcare or other benefits will be impacted by such deferral.

for their salaried (exempt) and hourly employees (non-exempt), in the aggregate amount estimated to be approximately $964,000.[6]

b. After (i) funding the estimated accrued July 12 Payroll and (ii) forecasted payment of certain tax, regulatory, and engineering expenses (totaling, in the aggregate, $104,000), the Debtors' unrestricted cash balance on July 19, 2024 is projected to be approximately $1,017,000 ("**July 19 Unrestricted Cash**"), which includes the $345,000 of cash receipts received by the Debtors the week ending Friday, July 5, 2024.

c. Further, in the days following the July 16 end date of the third interim cash collateral period, the Debtors forecast payment of its employees' withholding contributions to certain benefits programs, including 401k plans (there is no employer match), healthcare flexible spending, reimbursable employee expenses, and an independent contractor weekly payment, which are forecasted to total approximately $193,000, in the aggregate.

d. The pay period following the pay period ending on July 12, 2024 is from July 13, 2024 through and including July 26, 2024 (the "**July 13–26 Pay Period**"). The Debtors project that salary and hourly Payroll for the July 13–26 Pay Period will be, at a minimum, $830,000 (the "**July 26 Payroll**"). In addition, the Debtors have forecasted payment of certain tax, regulatory, and engineering expenses during the week ending July 26, 2024 totaling, in the aggregate, approximately $105,000.

e. The Debtors project to be unable to fund the July 26 Payroll and other critical operational post-petition expenses, without having received any proceeds under the Fleet Sales Agreement (i.e., the July 19 Unrestricted Cash is insufficient to fund the approximately $1.1 million for Payroll and other expenses during the July 13–26 Pay Period). Although it is not the Debtors' customary practice to fund Payroll on a weekly basis, subject to any unforeseen events and/or expenses, the Debtors could, however, fund Payroll for one week of the two-week July 13–26 Pay Period, i.e., using July 19 Unrestricted Cash ($1.017 million), the Debtors could fund for the week of July 13, 2024 to July 19, 2024 (i) the remaining employee obligations payable during the week ending July 19, 2024 (ii) the anticipated Payroll ($415,000, or 50% of the $830,000), and (iii) the other critical operational post-petition expenses for this week (projected to be approximately $105,000).

6. Accordingly, after deferring payment of certain expenses and updating the Debtors' budget in light of such deferments, and the unanticipated receipt of approximately $345,000 during the week of July 5, 2024, without having received proceeds under the Fleet Sales Agreement,

---

[6] The Debtors' customary practice is to fund Payroll on a biweekly basis to its payroll provider, 24-48 hours prior to the applicable payment date. Salaried employees are paid on Wednesdays, and hourly employees are paid on Fridays.

Payroll will accrue during the week starting on July 20, 2024 without the Debtors having sufficient unrestricted cash to cover such accrual.[7]

7. Therefore, in my view, it is critical that the Debtors are able to realize cash proceeds from the delivery of Sale Vehicles under the Fleet Sales Agreement by July 18, 2024, at the latest. However, the Debtors would need several days' lead time to terminate their workforce in the event the Proposed Order is not entered. Accordingly, it is my view that the hearing to consider the Fleet Sales Motion should be held on July 16, 2024 (at the latest). It is also my view that it is imperative that the hearing not be further delayed given the Debtors' precarious cash position, the fact that with each passing day the Debtors are incurring additional expenses and liabilities (including certain expenses and liabilities related to the Fisker Inventory that are borne by the Buyer upon the sale of each Sale Vehicle), and the unquantifiable risks associated with any delay.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: July 9, 2024                     */s/ John C. DiDonato*
                                        John C. DiDonato
                                        Chief Restructuring Officer

---

[7] While the Debtors are attempting to access certain of its restricted cash—including by reducing the amount of restricted cash securing certain of the Debtors' surety bond and letter of credit obligations—the Debtors do not anticipate being able to access any portion of its restricted cash soon enough to change the timing for when the Debtors will be unable to satisfy the payment obligations described herein. Similarly, the Debtors anticipate receiving certain tax refunds for overpayment of sales and use taxes but cannot predict the timing of receipt of such funds.