**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FISKER INC., *et al.*, | Case No. 24-11390 (TMH) |
| Debtors.[1] | (Jointly Administered) |
| | **Re: Docket Nos. 110, 193, 194** |

### ORDER (I) AUTHORIZING AND APPROVING THE SALE OF CERTAIN OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, (II) AUTHORIZING THE DEBTORS TO ENTER INTO AND PERFORM UNDER THE FLEET SALES AGREEMENT, AND (III) GRANTING RELATED RELIEF

Upon the motion [D.I. 110] (the "**Motion**")[2] of Fisker Inc. and certain of its affiliates (collectively, the "**Debtors**"), each of which is a debtor and debtor in possession in the Chapter 11 Cases, for entry of an order (this "**Order**"), pursuant to sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 9006, 9007, 9008 and 9014, (a) authorizing and approving the sale of certain vehicles of the Debtors as set forth in the Fleet Sales Agreement (collectively, the "**Sale Vehicles**" and together with the License (as defined below) as and to the extent set forth in the Fleet Sales Agreement, the "**Purchased Assets**") free and clear of all liens, claims, encumbrances, and other interests in accordance with and subject in all respects to the

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers or Delaware file numbers, are as follows: Fisker Inc. (0340); Fisker Group Inc. (3342); Fisker TN LLC (6212); Blue Current Holding LLC (6668); Platinum IPR LLC (4839); and Terra Energy Inc. (0739). The address of the debtors' corporate headquarters is 14 Centerpointe Drive, La Palma, CA 90623.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or the Fleet Sales Agreement, as applicable.

terms and conditions contained in the Fleet Sales Agreement and this Order;[3] (b) authorizing the entry into and performance under the terms and conditions of that certain Fleet Sales Agreement, dated as of June 30, 2024, by and among American Lease LLC (the "**Buyer**") and Debtor Fisker Group Inc. (the "**Seller**"); and (c) granting related relief (collectively, the transactions described in the foregoing subparagraphs (a) through (c), the "**Sale Transaction**"), as more fully described in the Motion, upon the *Declaration of John C. DiDonato in Support of the Motion of Debtors for Entry of an Order (I) Authorizing and Approving the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, and Encumbrances, and Interests, (II) Authorizing the Debtors to Enter Into and Perform Under the Fleet Sales Agreement, and (III) Granting Related Relief* [D.I. [●]] (the "**DiDonato Sale Declaration**"), and upon the *Declaration of John C. DiDonato as Chief Restructuring Officer of the Debtors in Support of Debtors' Chapter 11 Proceedings and First Day Pleadings* [D.I. 37] (the "**DiDonato First Day Declaration**" and, together with the DiDonato Sale Declaration, the "**DiDonato Declarations**"); and the Court having reviewed and considered the Motion, and the DiDonato Declarations; and the Court having held a hearing to consider the relief requested in the Motion (the "**Hearing**"); and the Court having determined that the legal and factual bases set forth in the Motion and the DiDonato Declarations and at the Hearing establish just cause for the relief granted herein; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors, their creditors, their estates, and all other parties in interest; and the Court having determined that the relief requested in the Motion is necessary to

---

[3] Pursuant to the Fleet Sales Agreement, the Seller is also granting the Buyer a royalty-free, nonexclusive, non-assignable, non-sublicensable license (the "**License**"), solely to access and use in the operation of the Sale Vehicles (and any other Fisker vehicles that the Buyer may own or otherwise acquire under the Fleet Sales Agreement or otherwise), to all relevant source code or other proprietary software operating elements, as well as existing developer work, as may be necessary or required for (i) the operability of the Sale Vehicles and any other Fisker vehicles that the Buyer may own or otherwise acquire under the Fleet Sales Agreement or otherwise and (ii) post-transaction software improvements to the Sale Vehicles (and to any other Fisker vehicles that the Buyer may own or otherwise acquire under the Fleet Sales Agreement or otherwise).

avoid immediate and irreparable harm to the Debtors and their estates as contemplated by Bankruptcy Rule 6003; and all objections and reservations of rights filed or asserted in respect of the Motion, if any, having been withdrawn, resolved, or overruled; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND, DETERMINED, AND CONCLUDED THAT:**[4]

A.      <u>Petition Date</u>.  On June 17 and 19, 2024, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors remain in possession of their property and continue to operate and manage their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request has been made for the appointment of a trustee or examiner in the Chapter 11 Cases.  The Chapter 11 Cases are being jointly administered, pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1.

B.      <u>Committee Formation</u>.  On July 2, 2024, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed an Official Committee of Unsecured Creditors pursuant to section 1102 of the Bankruptcy Code.  *See Not. of Appointment of Comm. of Unsecured Creditors* [D.I. 106].

C.      <u>Jurisdiction and Venue</u>.  This Court has jurisdiction to consider the Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference*, dated February 29, 2012 (Sleet, C.J.).  This is a core proceeding under 28 U.S.C. § 157(b)(2)(M) and (N) that the Court can decide by a final order under Article III of the United States Constitution.  Venue of

---

[4]  The findings, determinations, and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

these Chapter 11 Cases and this Motion is proper in this District under 28 U.S.C. §§ 1408 and 1409.

D. <u>Final Order</u>. This Order constitutes a final order within the meaning of 28 U.S.C. §158(a). Notwithstanding Bankruptcy Rule 6004(h), and to any extent necessary under Bankruptcy Rule 9014 and rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in, and good and sufficient cause for, the immediate implementation of this Order, and expressly directs entry of judgment as set forth herein.

E. <u>Legal Predicates</u>. The predicates for the relief requested by this Motion are sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 9006, 9007, 9008 and 9014 and the applicable Local Rules.

F. <u>Notice</u>. As evidenced by the affidavits of service previously filed with the Court [D.I.s [●]], and based on the record at the Hearing, including representations of counsel, (i) due, proper, timely, adequate and sufficient notice of the Motion, the Hearing, the Sale Transaction, and the relevant objection deadlines has been provided in accordance with sections 102(l) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 9006, 9007, 9008 and 9014, and the applicable Local Rules, including Local Rules 2002-1 and 6004-1, to the Notice Parties, (ii) such notice was good and sufficient, and appropriate under the particular circumstances, and (iii) no other or further notice is or shall be required.

G. <u>Corporate Authority</u>. The Seller and each other applicable Debtor (i) has full corporate power and authority to execute and perform under the Fleet Sales Agreement and any other documents contemplated thereby and hereby (collectively, the "**Transaction Documents**"), and entry into and performance under the Fleet Sales Agreement has been duly and validly

authorized by all necessary corporate action of the Seller and each other applicable Debtor, (ii) has all of the corporate power and authority necessary to consummate the transactions contemplated by this Order and the Transaction Documents, (iii) has taken all corporate action and formalities necessary to authorize and approve the Transaction Documents and the Seller's (and each other applicable Debtors') consummation of the transactions contemplated thereby and hereby, including as required by their respective organizational documents, (iv) has duly executed and delivered the Fleet Sales Agreement, and (v) no government, regulatory or other consents or approvals, other than those expressly provided for in the Transaction Documents, if any, are required for the Debtors to enter into the Transaction Documents or to consummate and perform under the Transaction Documents.   Consummation and performance under the Transaction Documents, including consummating the Sale Transaction contemplated thereunder, do not violate or conflict with any applicable law.

H.      Buyer's Disclosures.  Buyer disclosed to the Debtors information concerning the identity of the Buyer and its affiliates.  Buyer's disclosures are sufficient to provide the Debtors complete and accurate information concerning all material connections between the Buyer and the Debtors, its affiliates, and each of their respective current or former directors and officers.  Buyer's disclosures establish that there are no material connections between the Buyer and the Debtors, its affiliates, and each of their respective current or former directors and officers.

I.      Opportunity to Object.  A fair and reasonable opportunity to object and to be heard with respect to the Motion and the relief requested therein has been given to all interested persons and entities, including the Notice Parties.

J.      Sale of the Fisker Inventory.  As demonstrated by evidence proffered or adduced and the representations of counsel at the Hearing, the Debtors negotiated in good faith and at arms'

length with prospective purchasers (including the Buyer) and obtained the highest and best offer that could reasonably be obtained for the Fisker Inventory under the circumstances.  Sound business reasons exist for the Debtors' entry into the Transaction Documents and for the Sale Transaction.   Entry into the Transaction Documents, and the consummation of the Sale Transaction, constitutes a good faith and reasonable exercise of the Debtors' sound business judgment and such acts are in the best interests of the Debtors, their estates, and all parties in interest.  The Court finds that the Debtors have articulated good and sufficient business reasons justifying entry into and performance under the Fleet Sales Agreement and the Sale Transaction. Such business reasons include the following: (i) the Fleet Sales Agreement constitutes the highest and best offer for the Purchased Assets that the Debtors could secure under the circumstances; (ii) the Sale Transaction maximizes the value of the Debtors' estates; (iii) the Fleet Sales Agreement contemplates the purchase of the entire Fisker Inventory by a single purchaser under a single agreement, which maximizes the return of value to the Debtors' estates for the benefit of all stakeholders; (iv) the Fleet Sales Agreement contemplates the Debtors' receipt of payment for the delivery of Sale Vehicles promptly following entry of this Order, enabling the Debtors to fund near-term, vital business expenses necessary to effectuate an orderly liquidation that the Debtors otherwise may not be in a position to fund; (v) to the extent a Sale Vehicle is sold to the Buyer pursuant to the Fleet Sales Agreement prior to the June 26 Stop-Sale Hold having been cleared for any such Transferred Vehicle, the Fleet Sales Agreement includes the Buyer's agreement not to operate, and this Order enjoins the Buyer's operation of, any such Transferred Vehicle until the June 26 Stop-Sale Hold has been cleared for the applicable Transferred Vehicle (at which time the Injunction (as defined below) shall be fully and automatically lifted with respect to the applicable Transferred Vehicle in accordance with the terms hereof); and (vi) unless the Sale Transaction and

6

any other transaction contemplated by the Transaction Documents are concluded expeditiously, as provided for in the Motion and pursuant to the Fleet Sales Agreement, the Debtors' liquidity will be severely constrained and may be insufficient to continue an orderly liquidation process in chapter 11 and, as such, recoveries to creditors may be significantly diminished.

K.     <u>No Other Offers</u>.  No other person or entity or group of persons or entities has offered to purchase the Purchased Assets in the quantum or for an amount that would give equal or greater economic value to the Debtors and their estates in the aggregate than the value being provided pursuant to the Fleet Sales Agreement.  Under the circumstances, the Sale Transaction is the best alternative available to the Debtors to maximize the return to the Debtors' estates.  The terms and conditions of the Fleet Sales Agreement, including the consideration to be realized by the Debtors, are fair and reasonable.  Given the circumstances of the Chapter 11 Cases and the adequacy and fair value of the consideration provided under the Fleet Sales Agreement, approval of the Motion, the Fleet Sales Agreement, and the transactions contemplated thereby and hereby (including the Sale Transaction) is in the best interest of the Debtors, their estates, their creditors, and all other parties in interest.

L.     <u>Arms-Length Sale</u>.  The Transaction Documents were negotiated, proposed, and entered into by the Seller (and each other applicable Debtor) and the Buyer without collusion, in good faith, and at arm's-length.  The Debtors, the Buyer, and their respective representatives have not engaged in any conduct that would cause or permit the Transaction Documents, or the consummation of the Sale Transaction, to be avoidable or avoided, or for costs or damages to be imposed, under section 363(n) of the Bankruptcy Code, or has acted in bad faith or in any improper or collusive manner with any entity in connection therewith.

7

M.     <u>Good Faith Buyer</u>.  The Buyer is a good faith Buyer for value within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to full protections afforded under section 363(m) of the Bankruptcy Code and any other applicable or similar bankruptcy and non-bankruptcy law.  The Buyer and its management, members, managers, officers, directors, employees, agents, and representatives have proceeded in good faith in all respects in connection with these Chapter 11 Cases, the Fleet Sales Agreement, and the Sale Transaction.  Furthermore, the Buyer is not an "insider" (as defined under section 101(31) of the Bankruptcy Code) of any Debtor.  Without limiting the foregoing: (i) the Buyer recognized that the Debtors were free to deal with any other party interested in purchasing the Purchased Assets; (ii) the maximum amount of consideration to be provided by the Buyer in connection with the Sale Transaction has been disclosed; (iii) no common identity of directors, officers, or controlling stockholders exists among the Buyer and any Debtor; (iv) the negotiation and execution of the Transaction Documents were at arm's-length and in good faith and, at all times, each of the Buyer and the Debtors were represented by competent counsel of their choosing; and (v) the Buyer has not acted in a collusive manner with any person or entity.  The Buyer will be acting in good faith within the meaning of section 363(m) of the Bankruptcy Code in closing the transactions contemplated by the Transaction Documents.

N.     <u>Free and Clear Sale</u>.  The Debtors may sell the Purchased Assets free and clear of all encumbrances, claims, liens, and other interests of any kind or nature whatsoever against the Debtors or the Purchased Assets (collectively, the "**Interests**") (other than any obligations and liabilities under the Transaction Documents, including under sections 4 and 8 of the Fleet Sales Agreement, and sections 1(b), 4 (subject to the terms and conditions of this Order), and 6 of Exhibit 1 annexed thereto) (collectively, the "**Assumed Liabilities**"), because, with respect to each person

or entity asserting an Interest, one or more of the standards set forth in sections 363(f)(1)–(5) of the Bankruptcy Code has been satisfied. Each person or entity with an Interest in or against the Purchased Assets: (i) has, subject to the terms and conditions of this Order, consented to the Sale Transaction; (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such Interest; or (iii) otherwise falls within one or more of the other subsections of section 363(f) of the Bankruptcy Code. All holders of Interests who did not object or withdrew objections to the Motion are deemed to have consented to the Sale Transaction pursuant to section 363(f)(2) of the Bankruptcy Code. Any holders of Interests who did object, fall within one or more of the other subsections of Bankruptcy Code section 363(f), including that such holders of Interests are adequately protected—thus satisfying section 363(e) of the Bankruptcy Code—by having their Interests in the Purchased Assets, if any, attach to the Proceeds (as defined below) of the Sale Transaction ultimately attributable to such Purchased Assets against or in which they assert such Interests, with the same priority that existed immediately prior to Closing (as defined below). For the avoidance of doubt, upon Closing, in each case, the first priority liens on and security interests of the Prepetition Secured Parties (as defined in the *Fourth Interim Order (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection, (III) Modifying the Automatic Stay, (IV) Scheduling a Further Hearing on the Motion, and (V) Granting Related Relief* (as amended, modified, extended or supplemented from time to time in accordance with the terms thereof, the "**Cash Collateral Order**") in the Transferred Vehicles (as defined below) and other Purchased Assets transferred at such time shall attach to all payments in respect of and Proceeds of the Sale Transaction in respect of such Purchased Assets, subject only to any timely commenced, properly filed, and successful Challenge, to the Carve-Out, and to any Permitted

Prepetition Liens, if any (each as defined in the Cash Collateral Order), in each case as and to the extent provided in the Cash Collateral Order, including paragraph 10 thereof.

O.    The Buyer would not have entered into the Fleet Sales Agreement and would not consummate the transactions contemplated thereby (i) if the transfer of the Purchased Assets was not free and clear of all Interests, including rights or claims based on any successor or transferee liability, of any kind or nature whatsoever or (ii) if the Buyer, or any affiliates of the Buyer, or any past, present or future members, partners, principals, or equity security holders (or equivalent), whether direct or indirect, lenders, subsidiaries, parents, divisions, funds, agents, representatives, insurers, attorneys, successors or assigns of the Buyer, or any of the directors, managers, officers, employees, agents, representatives, attorneys, contractors, subcontractors, independent contractors, owners, or insurance companies of any of the foregoing (collectively, and each in their capacity as such, "**Buyer Parties**") would, or in the future could, be liable for any such Interests.

P.    Not transferring the Purchased Assets to the Buyer free and clear of all Interests would adversely impact the Debtors' efforts to maximize the value of their estates, and the transfer of the Purchased Assets to the Buyer other than pursuant to a transfer that is free and clear of all Interests would be of substantially less benefit to the Debtors' estates.  The total consideration to be provided under the Fleet Sales Agreement reflects the Buyer's reliance on this Order to provide the Buyer, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, with title to and possession of the Purchased Assets free and clear of all Interests.

Q.    <u>Prompt Consummation</u>.  The sale of the Purchased Assets must be approved and consummated promptly to preserve the value of the Purchased Assets.  Therefore, time is of the essence in consummating the Sale Transaction, and the Debtors and the Buyer intend to close the Sale Transaction as soon as reasonably practicable.  The Debtors have demonstrated compelling

circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the transactions contemplated by the Fleet Sales Agreement, the Transaction Documents, and this Order, including the Sale Transaction. The Buyer, being a good faith Buyer under section 363(m) of the Bankruptcy Code, may close the Sale Transaction contemplated by the Fleet Sales Agreement at any time after entry of this Order, subject to the terms and conditions of the Fleet Sales Agreement. Accordingly, there is cause to lift the stay contemplated by Bankruptcy Rule 6004 with regards to the transactions contemplated by this Order.

R.   <u>No Fraudulent Transfer</u>.  The Transaction Documents were not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession or the District of Columbia, and none of the parties to the Transaction Documents are consummating the Sale Transaction for any other fraudulent or otherwise improper purpose.

S.   <u>Fair Consideration</u>.  The consideration provided by the Buyer for the Purchased Assets pursuant to the Fleet Sales Agreement (i) is fair and reasonable, (ii) is the only offer received for the purchase of the entire Fisker Inventory, (iii) will provide a greater recovery for the Debtors' creditors than would be provided by any other known alternative, and (iv) constitutes reasonably equivalent value, fair consideration, and fair value under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia (including the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act, and the Uniform Voidable Transactions Act), and any other applicable law.

T.   <u>Buyer Not an Insider and No Successor Liability</u>.  The Buyer is not an "insider" or "affiliate" of the Debtors, as those terms are defined in the Bankruptcy Code, and no common

identity of incorporators, directors or controlling stockholders exists between the Buyer and the Debtors. The transfer of the Purchased Assets to the Buyer, the assumption of the Assumed Liabilities, and the consummation of the Sale Transaction (including any individual elements of the Sale Transaction), except as otherwise set forth in the Fleet Sales Agreement, do not, and will not, subject the Buyer Parties to any liability with respect to the operation of the Debtors' businesses prior to the closing of the Sale Transaction by reason of such transfer. None of the Buyer Parties, as a result of any action taken in connection with the Sale Transaction, is a successor to or a mere continuation of any of the Debtors or their respective estates and there is no continuity or common identity between the Buyer and the Debtors. The Sale Transaction does not amount to a consolidation, merger or *de facto* merger of the Buyer and the Debtors and/or the Debtors' estates. There is not substantial continuity between any of the Buyer Parties and the Debtors, and there is no continuity of enterprise between the Debtors and the Buyer Parties. None of the Buyer Parties constitute a successor to the Debtors or the Debtors' estates.

U.    <u>Binding Agreement</u>. The Transaction Documents are, or upon the execution of thereof by the parties thereto, will be, valid and binding contracts between the Debtors and the Buyer and shall be enforceable pursuant to their terms. Notwithstanding anything contained herein, the Transaction Documents or any further order of the Court to the contrary, the Transaction Documents and consummation of the Sale Transaction shall be, to the extent provided in the Transaction Documents, specifically enforceable against and binding upon the Debtors and any estate representative, including any chapter 7 trustee or chapter 11 trustee appointed in any of the Debtors' cases, any plan administrator, litigation trustee or liquidation trustee appointed in the Chapter 11 Cases or any successor cases, creditors and all other parties-in-interest, and shall not be subject to rejection or avoidance by the foregoing parties or any other person or entity. To the

extent that any chapter 7 or chapter 11 trustee is appointed in the Chapter 11 Cases, such trustee is hereby directed to fulfill the obligations of the Debtors under the Fleet Sales Agreement, each other Transaction Document, and this Order, in each case, in accordance with their respective terms and conditions, including seeking authorization from the Court to use cash collateral for such purposes.

V.    <u>Legal, Valid Transfer</u>.   The transfer of any Purchased Assets to the Buyer will in each case be a legal, valid, and effective transfer of the Purchased Assets, and will vest the Buyer with all right, title, and interest of the Debtors in and to such Purchased Assets free and clear of all Interests, except as expressly as set forth in the Fleet Sales Agreement.  The Purchased Assets constitute property of the Debtors' estates and good title to the Purchased Assets is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.  The Debtors are the sole and rightful owners of the Purchased Assets.

W.    <u>Not a Sub Rosa Plan</u>.   The Sale Transaction does not constitute a *sub rosa* chapter 11 plan or an element of such plan for the Debtors, for which approval has been sought without the protections that a disclosure statement would afford.  The Sale Transaction does not (i) impermissibly restructure the rights of the Debtors' creditors or equity interest holders, (ii) impair or circumvent voting rights with respect to any future plan proposed by the Debtors, (iii) impermissibly dictate a plan of reorganization for the Debtors, or (iv) classify claims or equity interests, compromise controversies, or extend debt maturities.

X.    <u>Consummation is Legal, Valid and Binding</u>.   The consummation of the Sale Transaction is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including sections 105(a), 363(b), 363(f), and 363(m) of the Bankruptcy Code, and all of the applicable requirements of the Bankruptcy Code have been complied with in respect

of the transactions contemplated by the Fleet Sales Agreement and the other Transaction Documents. The transactions contemplated under the Transaction Documents and this Order are inextricably linked and collectively constitute a single, integrated transaction.

Y.    <u>Legal and Factual Bases</u>.  The legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:**

### **General Provisions**

1.    The Motion is **GRANTED** as set forth herein, and the Sale Transaction contemplated thereby and by the Fleet Sales Agreement is approved, in each case, as set forth in this Order.

2.    All objections to the Motion or the relief requested therein, the Transaction Documents, the Sale Transaction, the entry of this Order, or the relief granted herein that have not been withdrawn, waived, or settled, or not otherwise resolved pursuant to the terms hereof, if any, are hereby **DENIED** and **OVERRULED** on the merits with prejudice. All withdrawn objections are deemed withdrawn with prejudice. Those parties, including those holders of Interests, who did not object to the Motion or the entry of this Order, or who withdrew their objections thereto, are deemed to have consented to the relief granted herein for all purposes, including, without limitation, pursuant to section 363(f)(2) of the Bankruptcy Code.

### **Approval of the Sale of the Purchased Assets**

3.    The Fleet Sales Agreement, including any amendments, supplements and modifications thereto, all other Transaction Documents, and all of the terms and conditions therein, are hereby **APPROVED** in all respects.

4.     Pursuant to sections 363(b) and (f) of the Bankruptcy Code, the Debtors are authorized to consummate the Sale Transaction and transfer and grant (as applicable) the Purchased Assets to the Buyer pursuant to, and subject to the terms and conditions of, the Fleet Sales Agreement and this Order, free and clear of all Interests.  As used in this Order, (i) "**Closing**" shall refer to any transfer of ownership of one or more Sale Vehicles to the Buyer in accordance with the Fleet Sales Agreement, (ii) "**Closing Date**" shall refer to the date on which a Closing with respect to such Sale Vehicle(s) occurs, and (iii) "**Transferred Vehicles**" shall refer to the Sale Vehicles for which a particular Closing has previously occurred.

### Sale and Transfer of the Purchased Assets

5.     The Sale Transaction authorized herein shall be of full force and effect, regardless of the Debtors' lack or purported lack of good standing in any jurisdiction in which the Debtors are formed or authorized to transact business.  The automatic stay imposed by section 362 of the Bankruptcy Code is modified to the extent necessary, without further order of this Court, to implement the Sale Transaction and the provisions of this Order, including, without limitation, to allow the Buyer to: (a) deliver any notice provided for in the Fleet Sales Agreement and any of the other Transaction Documents; (b) take any and all actions permitted under the Fleet Sales Agreement and any of the other Transaction Documents in accordance with the terms and conditions thereof; and (c) take any and all actions necessary or appropriate to implement the Sale Transaction.

6.     Pursuant to sections 105 and 363 of the Bankruptcy Code, the Debtors are hereby authorized, empowered and directed to take any and all actions necessary or appropriate to (a) sell the Purchased Assets to the Buyer and consummate the Sale Transaction in accordance with, and subject to the terms and conditions of, this Order, the Fleet Sales Agreement, and the other

Transaction Documents, and (b) transfer and assign to the Buyer all right, title, and interest (including common law rights) to all property and rights to be conveyed in accordance with and subject to the terms and conditions of the Transaction Documents, in each case without further notice to or order of this Court.  Subject to the Cash Collateral Order, the Debtors are authorized, but not directed, to pay the Vendors, as necessary in order to perform under the Transaction Documents; *provided* that, absent further order of the Court, payments made on account of prepetition claims held by such Vendors shall not exceed $1.5 million in the aggregate.  The Debtors are further authorized and directed to execute and deliver, and are empowered to perform under, consummate and implement, the Transaction Documents, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Fleet Sales Agreement, including the related documents, exhibits and schedules, and to take all further actions as may be reasonably necessary or desirable for the purposes of assigning, transferring, granting, conveying and conferring to the Buyer or reducing to possession the Purchased Assets in accordance with the Fleet Sales Agreement, or as may be necessary or appropriate to the performance of the Debtors' obligations as contemplated by the Transaction Documents, without further notice to or order of this Court.  Neither the Buyer nor the Debtors shall have any obligation to proceed with consummating the Sale Transaction until all conditions precedent to their obligations to do so under the applicable Transaction Documents have been met, satisfied, or waived.

7.      Pursuant to sections 105(a), 363(b) and 363(f) of the Bankruptcy Code, upon the occurrence of each Closing, the Transferred Vehicles shall be transferred to the Buyer in accordance with the Fleet Sales Agreement and this Order free and clear of all Interests.  On and after each Closing Date, any person or entity that has an Interest against or in the Transferred

Vehicles is authorized and directed to execute such documents and take all other actions as may be necessary to release its Interests in or against such Transferred Vehicles, if any, as such Interests may have been recorded or otherwise exist.  If any such person or entity shall not have delivered to the Debtors prior to each Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfactions or releases of all Interests that such person or entity has with respect to the Transferred Vehicles, or otherwise, then  the Debtors are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to such Transferred Vehicles; *provided* that, notwithstanding anything in this Order, the Fleet Sales Agreement, or other Transaction Documents to the contrary, the provisions of this Order authorizing and approving the transfer of the Purchased Assets free and clear of all Interests, subject to the terms and provisions of the Fleet Sales Agreement and this Order, shall be self-executing, and neither the Debtors nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Order, the Fleet Sales Agreement or any of the other Transaction Documents.

8.      Following each Closing Date, the Buyer may, but shall not be required to, file or record a certified copy of this Order in any filing or recording office in any federal, state, county, or other jurisdiction in which the Debtors are formed or have real or personal property, or with any other appropriate clerk or recorder, and such filing or recording shall be accepted and shall be sufficient to release, discharge, and terminate any of the applicable Interests as set forth in this Order as of the Closing and/or to transfer and assign the Transferred Vehicles to the Buyer as of each Closing free and clear of any and all Interests.  Subject to the occurrence of a Closing with respect to any Transferred Vehicles, this Order will be construed, and shall constitute for any and

all purposes, a full and complete general assignment, conveyance and transfer to the Buyer of such Transferred Vehicles or a bill of sale transferring good and marketable title in such Transferred Vehicles to the Buyer.  Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by this Order, the Fleet Sales Agreement and the other Transaction Documents.

9.     At each Closing, the Debtors' right, title, and interest in and to, and possession of, the Transferred Vehicles shall be immediately vested in the Buyer pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code. Such transfer shall constitute a legal, valid, enforceable, and effective transfer of such Transferred Vehicles, and shall vest the Buyer with all right, title, and interest of the Debtors in and to such Transferred Vehicles free and clear of all Interests of any kind or nature whatsoever.  Subject to paragraph 14 herein, all persons and entities who are presently, or on the Closing Date may be, in possession of some or all of the Transferred Vehicles are hereby directed to surrender possession of any and all portions of such Transferred Vehicles to the Buyer on the Closing Date.

10.     Except as expressly permitted by the Fleet Sales Agreement or this Order, all persons and entities holding Interests against or in the Transferred Vehicles are forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing such Interests against the Buyer, the other Buyer Parties, or any of their respective successors or assigns, their respective assets or property and the Transferred Vehicles.  Following each Closing Date, no party shall interfere with the Buyer's title to use, enjoyment and operation of the Transferred Vehicles based on or related to any such Interest or based on any action or failure to act of the Debtors in the Chapter 11 Cases or any successor cases.

18

11.     To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may deny, revoke, suspend, or refuse to renew any permit, license, or similar grant relating to the operation of the Transferred Vehicles on account of the filing or pendency of the Chapter 11 Cases or the consummation of the transactions contemplated by the Fleet Sales Agreement or any of the other Transaction Documents, including the Sale Transaction and the transfer of the Transferred Vehicles.  Each and every federal, state, and local governmental agency or department is hereby authorized and directed to accept any and all documents and instruments necessary and appropriate to consummate the Sale Transaction set forth in the Fleet Sales Agreement.

### Application of Proceeds

12.     Any and all valid and perfected Interests in the Transferred Vehicles and other Purchased Assets transferred at such time arising prior to each Closing Date shall attach to any proceeds of the Sale Transaction immediately upon receipt of such proceeds by the Debtors in the order of priority, and with the same validity, force and effect which they may have against such Transferred Vehicles and other Purchased Assets transferred at such time as of immediately prior to each Closing Date, subject to any rights, claims and defenses that the Debtors, the Debtors' estates, any trustee for any Debtor, or any other party interest, including the Committee, as and to the extent applicable, may possess with respect thereof (including, without limitation, the rights of any party in interest as and to the extent set forth in paragraph 10 of the Cash Collateral Order).

13.     All payments to be made to the Debtors under the Transaction Documents (the "**Proceeds**") shall, in each case, be paid into that certain deposit account ending in 8333 at JPMorgan Chase Bank, N.A. belonging to Fisker Group Inc. (the "**Blocked Account**"), which is subject to that certain Blocked Account Control Agreement, dated January 18, 2024, by and among certain Debtors, CVI Investments, Inc., as administrative agent, and JPMorgan Chase Bank, N.A.

The Proceeds shall remain in the Blocked Account, and nothing in this Order authorizes (i) the Debtors or any other party in interest to use or apply any Proceeds; (ii) the Prepetition Secured Parties to exercise any remedies with respect to any Proceeds; or (iii) any party to apply the Proceeds in satisfaction of the Prepetition Secured Obligations (as defined in the Cash Collateral Order), in each case unless and until the Court orders otherwise in a Cash Collateral Order (or other order, as applicable) entered by the Court concurrent with or following entry of this Order. For the avoidance of doubt, any insurance policy or proceeds paid or payable to the Debtors or their estates in respect of any of the Purchased Assets, including any Austrian Sale Vehicles (as defined below), as a result of any damage or loss in transport or otherwise resulting to such Purchased Assets, constitute Proceeds and shall be payable into the Blocked Account subject to the same terms and conditions as all other Proceeds.

14.    As of the date the Motion was filed, one hundred eighteen (118) Sale Vehicles in the Fisker Inventory were located in Austria (the "**Austrian Sale Vehicles**") and four hundred eighty (480) Sale Vehicles in the Fisker Inventory were located in Belgium (the "**Belgium Sale Vehicles**" and, together with the Austrian Sale Vehicles, the "**Foreign Sale Vehicles**").  In order to be able to export the Foreign Sale Vehicles from Austria and Belgium, permitting such Foreign Sale Vehicles to be sold to the Buyer as part of the Sale Transaction, the Debtors have agreed to transfer, on or before August 8, 2024, an amount equal to 29% (or approximately $2.35 million) of the net proceeds (after deducting customs, duties, and logistics costs from the gross proceeds received) anticipated to be received from the sale of the Foreign Sale Vehicles under the Fleet Sales Agreement to Fisker's non-Debtor affiliate, Fisker GmbH (Austria) (the "**Austrian Transfer**").  The Austrian Transfer shall be made into an escrow account established by the Debtors' Austrian counsel (the "**Escrow Agent**") and such transfer shall be conditioned on and

subject to the execution by the Debtors and Fisker GmbH (Austria) of an escrow agreement, in form and substance acceptable to the Debtors, Fisker GmbH (Austria), and the Prepetition Secured Parties (as defined in the Cash Collateral Order) (the "**Escrow Agreement**").  The Debtors shall provide a draft of the Escrow Agreement to the Committee and the U.S. Trustee as promptly as practicable following entry of this Order.  The Debtors shall file the proposed Escrow Agreement with the Court no later than seven days prior to entering into the Escrow Agreement.  All parties' rights with respect to the Escrow Agreement are reserved within such seven-day period.  No funds shall be released from the escrow except in accordance with the Escrow Agreement and subject to (a) a further order of court in the Austrian Proceeding (as defined below), approving the Austrian Transfer and related transactions, which shall be in form and substance acceptable to the Debtors, Fisker GmbH (Austria), and the Prepetition Secured Parties and (b) the Escrow Agent's receipt of a jointly executed irrevocable instruction from Fisker GmbH (Austria) and the administrators of the Austrian Proceeding to possess as owner, which instruction authorizes the Escrow Agent, without the consent of any other party, to effectuate the transfer of the Foreign Sale Vehicles to the United States.  Following the release of funds from escrow in accordance with the Escrow Agreement, the Foreign Sale Vehicles will be imported to the United States.  Notwithstanding anything to the contrary in this Order or in any other order, the Debtors are hereby authorized to effectuate the Austrian Transfer in accordance with the terms and conditions of this Order, *provided* that nothing in this Order shall constitute a waiver by the Debtors or any party in interest of any rights they may have in respect of Fisker GmbH (Austria) or its assets, or otherwise related to or in connection with the restructuring or insolvency proceeding of Fisker GmbH (Austria) currently pending in Austria (the "**Austrian Proceeding**"), except as otherwise expressly provided herein.

**No Successor Liability**

15.    The Buyer is not a "successor" to the Debtors or their estates by reason of any theory of law or equity, and, except as otherwise provided in the Fleet Sales Agreement, the Buyer shall not assume, or be deemed to assume, or in any way be responsible for any liability or obligation of any of the Debtors and/or their estates with respect to the Purchased Assets or otherwise, including, but not limited to, under any bulk sales law, doctrine, or theory of successor liability, or similar theory or basis of liability or responsibility for any claim against any Debtor or against an insider of any Debtor, or similar liability, other than as provided in the Transaction Documents, including the Assumed Liabilities.  Except to the extent the Buyer assumes liabilities pursuant to the Fleet Sales Agreement, neither the purchase of the Purchased Assets by the Buyer nor the fact that the Buyer is using any assets previously operated by the Debtors will cause the Buyer to be deemed a successor in any respect to the Debtors' business or incur any liability derived therefrom of any kind or character, in whole or in part, directly or indirectly, including an Interest or liability arising under: (a) any employment or labor agreements or the termination thereof; (b) any pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, including any pension plan of or related to any of the Debtors, any of the Debtors' predecessors, or any current or former employees of any of the foregoing, or the termination of any of the foregoing; (c) the Debtors' business operations or the cessation thereof; (d) any litigation involving one or more of the Debtors; (e) any claims of any former employees of any of the Debtors; and (f) any employee, workers' compensation, occupational disease, or unemployment or temporary disability related law, including claims that might otherwise arise under or pursuant to: (i) the Employee Retirement Income Security Act of 1974, as amended; (ii) the Fair Labor Standards Act; (iii) Title VII of the Civil Rights Act of 1964; (iv) the Federal

22

Rehabilitation Act of 1973; (v) the National Labor Relations Act; (vi) the Worker Adjustment and Retraining Notification Act of 1988; (vii) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended; (viii) the Americans with Disabilities Act of 1990; (ix) the Consolidated Omnibus Budget Reconciliation Act of 1985; (x) the Multiemployer Pension Plan Amendments Act of 1980; (xi) state and local discrimination laws; (xii) state and local unemployment compensation laws or any other similar state and local laws; (xiii) state workers' compensation laws; (xiv) any other state, local or federal employee benefit laws, regulations or rules or other state, local or federal laws, regulations or rules relating to wages, benefits, employment or termination of employment with any or all of the Debtors or any of the Debtors' predecessors; (xv) any antitrust laws; (xvi) any product liability or similar laws, whether state, federal or otherwise; (xvii) any environmental laws, rules, or regulations, including under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601, *et seq.*, or similar state statutes; (xviii) any bulk sales or similar laws; (xix) any federal, state or local tax statutes, regulations or ordinances, including the Internal Revenue Code of 1986, as amended; or (xx) any common law doctrine of *de facto* merger or successor or transferee liability, successor-in-interest liability theory or any other theory of or related to successor liability, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, or liquidated or unliquidated with respect to any of the Debtors or any obligations of any of the Debtors arising prior to the Closing Date.

16.     The Buyer has given substantial consideration under the Fleet Sales Agreement, which consideration shall constitute valid and valuable consideration for the releases of any potential claims of successor liability against the Buyer and which shall be deemed to have been given in favor of the Buyer by all holders of Interests in or against the Debtors, or the Transferred

Vehicles.  Upon consummation of the Sale Transaction, the Buyer shall not by reason of (i) the purchase of the Transferred Vehicles by the Buyer or any action taken in connection with the Fleet Sales Agreement or Sale Transaction or (ii) the fact that the Buyer is using any assets previously operated by the Debtors be deemed to (a) be the successor to any Debtor, (b) have, *de facto* or otherwise, merged with or into any Debtor or any Debtor's estate, (c)  have a common identity with any Debtor, (d) have a continuity of enterprise with any Debtor, or (e) be a mere continuation, alter ego or substantial continuation of any Debtor.

## Good Faith

17.     The transactions contemplated by the Transaction Documents are undertaken by the Buyer without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein by this Order to consummate the Sale Transaction shall not alter, affect, limit, or otherwise impair the validity of the sale of any Purchased Assets to the Buyer, including any transfer of the Purchased Assets.  The Buyer is a good faith Buyer of the Purchased Assets within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to, and is hereby granted, the full rights, benefits, privileges and protections of section 363(m) of the Bankruptcy Code.  The Debtors and the Buyer have acted, and will be acting, in good faith if they proceed to consummate the Sale Transaction at any time after the entry of this Order.

18.     As a good faith Buyer of the Purchased Assets, the Buyer has not entered into an agreement with or colluded with any other parties interested in the Purchased Assets, and, therefore, the Sale Transaction may not be avoided pursuant to section 363(n) of the Bankruptcy Code, and no party shall be entitled to any damages or other recovery pursuant to section 363(n)

of the Bankruptcy Code in respect of the Fleet Sales Agreement, any of the other Transaction Documents or the Sale Transaction.

## **Injunction**

19.     To the extent a Sale Vehicle is sold to the Buyer pursuant to the Fleet Sales Agreement prior to the June 26 Stop-Sale Hold having been cleared for any such Transferred Vehicle (any such Transferred Vehicle, a "**Pre-Clearance Transferred Vehicle**"), the Buyer is hereby enjoined from operating or permitting any third party to operate any such Pre-Clearance Transferred Vehicle (the "**Injunction**") until the June 26 Stop-Sale Hold has been cleared for the applicable Pre-Clearance Transferred Vehicle (the date upon which the June 26 Stop-Sale Hold has been cleared for a Pre-Clearance Transferred Vehicle, the "**June 26 Stop-Sale Hold Clearance Date**").

20.     Until the date upon which the June 26 Stop-Sale Hold Clearance Date has occurred for all Pre-Clearance Transferred Vehicles, the Debtors shall continue to employ the Fisker Employee (at their own expense and will seek provision for such expense in the Cash Collateral Order) to be responsible for coordinating and confirming that the June 26 Stop-Sale Hold has been cleared for each Pre-Clearance Transferred Vehicle.  The Injunction with respect to any Pre-Clearance Transferred Vehicle shall be automatically and fully lifted and of no further force or effect in connection with such Pre-Clearance Transferred Vehicle upon the June 26 Stop-Sale Hold Clearance Date for such Pre-Clearance Transferred Vehicle, without the requirement of any further or additional action by the Court or any other person or party.[5]

---

[5]  To the extent that any chapter 7 or chapter 11 trustee is appointed in the Chapter 11 Cases, such trustee is hereby directed to fulfill the obligations of the Debtors under the Fleet Sales Agreement, each other Transaction Document, and this Order, in each case, in accordance with their respective terms and conditions, including seeking authorization from the Court to use cash collateral for such purposes.

**Additional Provisions**

21.     The Debtors will cooperate with the Buyer and the Buyer will cooperate with the Debtors, in each case to consummate the transactions contemplated in the Fleet Sales Agreement and any other Transaction Documents in accordance with their terms and conditions.

22.     The terms and provisions of the Transaction Documents and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors and their respective affiliates, successors and assigns, their estates, and their creditors and equity security holders, the Buyer, and its respective affiliates, successors and assigns, and any affected third parties including, all persons or entities asserting Interests in, on or against the Purchased Assets, notwithstanding any subsequent appointment of any trustee(s) (including any plan administrators, litigation or liquidation trustees appointed during the pendency of, or upon confirmation of a chapter 11 plan in, these Chapter 11 Cases), examiner(s), or other fiduciary under any chapter of the Bankruptcy Code, as to which trustee(s) (including any plan administrators, litigation or liquidation trustees appointed during the pendency of, or upon confirmation of a chapter 11 plan in, these Chapter 11 Cases), examiner(s), or other fiduciary such terms and provisions likewise shall be binding.

23.     The failure specifically to include any particular provisions of the Fleet Sales Agreement or any other Transaction Documents in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Fleet Sales Agreement and the other Transaction Documents be authorized and approved in their entirety.

24.     The Transaction Documents may be modified, amended, or supplemented by the parties thereto, in writing signed by all parties in accordance with the terms thereof, without further order of the Court, *provided* that any such modification, amendment, or supplement does not have a material adverse effect on the Debtors' estates.  To the extent that any provision of the Fleet

Sales Agreement conflicts with or is, in any way, inconsistent with any provision of this Order, this Order shall govern and control.  To the extent that this Order is inconsistent with any prior order or pleading with respect to the Motion, the terms of this Order shall govern.

25.     Nothing in this Order shall modify or waive any closing conditions or termination rights set forth in the Fleet Sales Agreement, and all such conditions and rights shall remain in full force and effect in accordance with their terms.

26.     Nothing contained in any chapter 11 plan confirmed in these Chapter 11 Cases, any order of this Court confirming such plans, any order dismissing any of these Chapter 11 Cases, or any other order in these Chapter 11 Cases, including any order entered after any conversion of these Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, shall alter, conflict with, or derogate from, the provisions of the Fleet Sales Agreement or the terms of this Order.  In the event of any such conflict or derogation, the terms of this Order and the Fleet Sales Agreement shall govern.  The provisions of this Order, the Fleet Sales Agreement, and any other Transaction Documents, and any actions taken pursuant hereto or thereto, shall survive entry of any order that may be entered confirming or consummating any chapter 11 plan of the Debtors, or which may be entered converting these Chapter 11 Cases from chapter 11 to chapter 7 of the Bankruptcy Code or dismissing these Chapter 11 Cases, and the terms and provisions of the Fleet Sales Agreement and any other Transaction Documents, as well as the rights and interests granted pursuant to this Order, the Fleet Sales Agreement and any other Transaction Documents shall continue in these Chapter 11 Cases or any superseding cases and shall be specifically performable and enforceable against and binding upon the Debtors, their estates, all creditors, all holders of equity interests in the Debtors, all holders of claim(s) (whether known or unknown) against the Debtors, all holders of Interests (whether known or unknown) against, in, or on all or any portion of the Purchased

27

Assets, the Buyer and their respective successors and permitted assigns, and any trustee, responsible officer, or other fiduciary hereafter appointed or elected as a legal representative of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code, including plan fiduciaries, plan administrators, or litigation or liquidation trustees appointed during the pendency of, or upon confirmation of a chapter 11 plan in, these Chapter 11 Cases.

27.     The provisions of this Order are nonseverable and mutually dependent.

28.     No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Sale Transaction.

29.     The Debtors and each other person or entity having duties or responsibilities under the Transaction Documents or this Order, and their respective agents, representatives, and attorneys, are authorized and empowered to carry out all of the provisions of the Fleet Sales Agreement and any other Transaction Documents, to issue, execute, deliver, file and record, as appropriate, the Fleet Sales Agreement, any other Transaction Documents, and any related agreements, and to take any action contemplated by the Fleet Sales Agreement, the other Transaction Documents or this Order, and to issue, execute, deliver, file, and record, as appropriate, such other certificates, documents, contracts, instruments, releases, deeds, bills of sale, assignments, or other agreements, and to perform such other acts as are consistent with, and necessary, desirable or appropriate to, implement, effectuate and consummate the Transaction Documents and this Order and the transactions contemplated thereby and hereby, all without further application to, or order of, the Court.  Without limiting the generality of the foregoing, this Order shall constitute all approvals and consents, if any, required by applicable business corporation, trust, and other laws of applicable governmental units with respect to the implementation and consummation of the Fleet Sales Agreement, any other Transaction

Documents, and this Order, and the transactions contemplated thereby and hereby. The transfer of the Purchased Assets to the Buyer pursuant to the Transaction Documents does not require any consent other than specifically provided for in the Fleet Sales Agreement or as provided for herein.

30.    Any Bankruptcy Rule or Local Rule that might otherwise delay the effectiveness of this Order is hereby waived, and the terms and conditions of this Order shall be effective and enforceable immediately upon its entry. Accordingly, the Debtors are authorized and empowered to close the Sale Transaction immediately upon, and following, entry of this Order.

31.    This Court shall retain jurisdiction to enforce and implement the terms and provisions of this Order, the Fleet Sales Agreement, and any other Transaction Documents, and all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith in all respects, including, retaining jurisdiction to (a) upon a Closing in each case, compel delivery of the Transferred Vehicles to the Buyer free and clear of all Interests, or compel the performance of other obligations owed by the Debtors, (b) compel delivery of the purchase price and performance of other obligations owed to the Debtors, (c) resolve any disputes arising under or related to the Fleet Sales Agreement, or any of the other Transaction Documents, except as otherwise provided therein, (d) interpret, implement, and enforce the provisions of this Order, and (e) protect the Buyer against (i) any claims of successor or vicarious liability related to the Purchased Assets or (ii) any Interests asserted in, on, or against the Debtors or the Transferred Vehicles, of any kind or nature whatsoever.

32.    The Debtors are authorized to take any action necessary or appropriate to implement and effectuate the terms of, and the relief granted in, this Order without seeking further order of the Court, *provided* that nothing in this Order authorizes (i) the Debtors or any other party in interest to use or apply any Proceeds; (ii) the Prepetition Secured Parties to exercise any

remedies with respect to any Proceeds; or (iii) any party to apply the Proceeds in satisfaction of the Prepetition Secured Obligations, in each case unless and until the Court orders otherwise in a cash collateral order entered by the Court concurrent with or following entry of this Order.

33.     Nothing in this Order or any action taken by the Debtors in furtherance of the implementation hereof shall be deemed to constitute an assumption or rejection of any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code, and all rights with respect to such matters are expressly reserved.

34.     Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained herein shall (a) create, nor is it intended to create, any rights in favor of, or enhance the status of any claim held by, any person or entity or (b) be deemed to convert the priority of any claim from a prepetition claim into an administrative expense claim.

35.     Nothing in this Order shall be construed as or deemed to constitute (a) an agreement or admission by the Debtors as to the amount, basis for, priority, character, or validity of any claim against the Debtors on any grounds, (b) a grant of third-party beneficiary status or bestowal of any additional rights on any third party, (c) a waiver or impairment of any rights, claims, or defenses of the Debtors' or any other party in interest's rights (including the Committee's rights) to dispute the amount, priority, character, or validity of any claim on any grounds, whether under bankruptcy or non-bankruptcy law, (d) a promise by the Debtors to pay any claim, or (e) an implication or admission by the Debtors that such claim is payable pursuant to this Order, *provided* that nothing in this paragraph 35 is intended to or shall contravene or override any stipulations or agreements of the Debtors, or any rights and remedies that CVI Investments, Inc., any other Prepetition Secured Party, or any other party in interest (including the Committee) may have, under or

pursuant to the Cash Collateral Order.  The rights of all parties in interest with respect to the allocation of the Proceeds between and among the Debtors are fully reserved.

36.     Notwithstanding any provision to the contrary in this Order, the Fleet Sales Agreement, or any other Transaction Document, nothing shall release, nullify, preclude or enjoin the enforcement of any police or regulatory power or any liability to a governmental unit that any entity would be subject to, other than, for the avoidance of doubt, the exercise or enforcement of any such police or regulatory power by NHTSA, or by any other governmental unit pursuant to the Safety Act, or any liability of any entity to NHTSA, or to any other governmental unit pursuant to the Safety Act, in each case, in connection with, resulting from, or otherwise related to the Sales Transaction, the Fleet Sales Agreement, or any other Transaction Document.

37.     Notwithstanding any other provision to the contrary, nothing in this Order, the Fleet Sales Agreement, or any other Transaction Document, authorizes the Seller or any other Debtor to sell any asset other than the Purchased Assets.  For the avoidance of doubt, and notwithstanding anything to the contrary in this Order, the Fleet Sales Agreement, or any other Transaction Document, the Purchased Assets do not include title or ownership of any intellectual property or software (other than, for the avoidance of doubt, any rights of the Buyer with respect to the License as provided in the Fleet Sales Agreement), or any supplies, parts, spare parts, or other non-vehicle inventory (other than water pumps delivered to the Buyer in connection with the June 26 Stop-Sale Hold as provided in the Fleet Sales Agreement), all of which the Debtors will continue to own after consummation of the Sales Transaction, subject to (a) any existing liens and rights with respect thereof and (b) paragraph 33 of this Order.

38.     The Debtors shall take commercially reasonable steps to ensure that (a) owners of the Debtors' vehicles as of the Petition Date (the "**Existing Owners**") have access to any service

related information or instruction provided to Buyer in connection with the Sale Transaction or thereafter, (b) Existing Owners have reasonable access to necessary software updates and any spare parts and supplies from the date of entry of this Order until the date upon which a final decree is entered closing the Debtors' Chapter 11 Cases (or, if converted, the Debtors' chapter 7 cases), and (c) any Stop-Sale Hold affecting any Existing Owner's vehicle is cleared as promptly as practicable prior to entry of a final decree closing the Debtors' Chapter 11 Cases (or, if converted, the Debtors' chapter 7 cases). From and after the date upon which this Order is entered, the Debtors and the Buyer shall engage in good faith negotiations with the Fisker Owners Association with respect to access and availability to spare parts and supplies, as applicable.

39.    For the avoidance of doubt, the Fisker Inventory shall not include any vehicles financed by JPMorgan Chase Bank, N.A. ("**Chase**"), including vehicles identified as numbered:

    (a)     VCF1ZBU23PG006054;
    (b)     VCF1ZBU2XPG003328;
    (c)     VCF1EBU24PG009458;
    (d)     VCF1ZBU26PG003150; and
    (e)     VCF1ZBU20PG004164;

In addition, as applicable, the Debtors and Chase shall be authorized, but not directed, to make arrangements for the delivery of such vehicles to Chase as soon as practicable and without need for relief from the automatic stay. Notwithstanding anything to the contrary herein, all parties' rights are reserved with respect to any vehicle not identified in this paragraph 39.

40.    For the avoidance of doubt, (a) any rights, interests, and obligations of the Debtors under that certain (i) License Agreement, effective as of October 13, 2021, between TomTom North America, Inc. ("**TomTom**") and the Seller (as amended, modified, or supplemented from time to time) and (ii) Data Processing Agreement, effective as of October 13, 2021, between TomTom and the Seller (as amended, modified, or supplemented from time to time) do not

constitute, and shall not be deemed, Purchased Assets, and (b) nothing in paragraph 38(b) of this Order shall prejudice any rights or remedies of TomTom.

41.     For the avoidance of doubt, other than the Debtors' authorization to effectuate the Austrian Transfer pursuant to and in accordance with paragraph 14 herein, nothing in this Order is intended to or shall be deemed to contravene or override any terms and conditions of the Cash Collateral Order.

Dated: July 17, 2024

_____
BRENDAN LINEHAN SHANNON
UNITED STATES BANKRUPTCY JUDGE

33