IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FISKER INC., *et al.,*<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 24-11390 (TMH)<br><br>Objection Deadline: 10/7/2024 @ 4:00 p.m.<br>Re: D.I. 505 |

**OBJECTION AND RESERVATION OF RIGHTS OF SHAMROCK (LA PALMA) PROPERTIES II, LLC IN RESPONSE TO THE
FOURTH NOTICE OF REJECTION OF CERTAIN EXECUTORY CONTRACTS AND/OR UNEXPIRED LEASES (AND THE ABANDONMENT OF PROPERTY)**

Shamrock (La Palma) Properties II, LLC ("Shamrock")[2] hereby files this objection and reservation of rights (the "Objection") in response to the *Fourth Notice of Rejection of Certain Executory Contracts and/or Unexpired Leases (and the Abandonment of Property)* (filed 10/1/2024 D.I. 505, the "Rejection Notice"), and in support hereof state as follows:

**BACKGROUND**

1.  Lessor owns that certain nonresidential real property, including the building and improvements located thereon, at 14 Centerpointe Drive (the "Premises") located in the City of La Palma, County of Orange, State of California and generally described as an approximately 78,980 square foot building (the "Building"), with parking for approximately 213 automobiles, which is part of a multi-building project known as Centerpointe La Palma (the "Project").

---

[1] The debtors and debtors in possession ("Debtors") in these chapter 11 cases, along with the last four digits of their respective employer identification numbers or Delaware file numbers, are as follows: Fisker Inc. (0340); Fisker Group Inc. (3342); Fisker TN LLC (6212); Blue Current Holding LLC (6668); Platinum IPR LLC (4839); and Terra Energy Inc. (0739). The address of the debtors' corporate headquarters is 14 Centerpointe Drive, La Palma, CA 90623.

[2] Pursuant to Del. Bankr. L.R. 9013-1(h), Shamrock does consent to the entry of final orders or judgments by the Court with respect to the Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

2. The Premises comprise a large commercial/industrial complex. Base rent for such Premises exceeds $80,000 per month.

3. Lessor leased the Premises to debtor Fisker Group Inc. ("Lessee") pursuant to that certain Standard Industrial/Commercial Single-Tenant Lease - Net dated as of April 4, 2022 by and between Lessor, and Lessee as tenant, which has been renewed from time to time (with the Addendum thereto of even date and all exhibits, schedules, amendments, and renewals, including, without limitation, that Amendment to Lease and Memorandum of Commencement Date dated April 4, 2022, the "Lease").

4. The Debtors filed their chapter 11 petitions with this Court on June 17th and June 19th, 2024 (the "Petition Dates").

5. On June 20, 2024, the Debtors filed the *Motion of Debtors for Entry of an Order (I) Authorizing Debtors to Reject Certain Unexpired Leases of Nonresidential Real Property and (II) Authorizing and Establishing Procedures to Reject Executory Contracts and Unexpired Leases* (D.I. 13, the "Rejection Procedures Motion").

6. The Rejection Procedures Motion was granted by Order dated July 29. 2024 (the D.I. 337, "Rejection Procedures Order").

7. Pursuant to the Rejection Procedures Order, the Debtors were authorized to notify lessors or counterparties to executory contracts of (i) the Debtors' intention to reject an unexpired lease or executory contract; (ii) the proposed effective date of such rejection (which, as to an unexpired lease of realty, must not be earlier than "the date upon which the applicable Debtor surrenders in writing (including via email) the premises to the landlord and returns the keys, key codes, or security codes as applicable"); and (iii) with respect to leases of real property, a "reasonable description" of any property being abandoned on the subject premises.

8. On August 15, 2024, the Court entered the Order (I) Approving (A) the Procedures for the Sale of Certain of the Debtors' De Minimis Assets Free and Clear of Liens, Claims, Encumbrances, and Interests, (B) the Form and Manner of Notice of De Minimis Sales, (II) Authorizing the Sale of Certain of Debtors' De Minimis Assets Free and Clear of Liens, Claims, Encumbrances, and Interests, and (III) Granting Related Relief (D.I. 428, the "*De Minimis* Sale Procedures Order").

9. Under the *De Minimis* Sale Procedures Order, the Debtors were authorized to sell certain types of *de minimis* assets according to limited notice procedures. For sales over $150,000, advanced notice of the sale was required. For sales of $150,000 or less, Debtors could file notices of sale retroactively but no later than two-weeks after the sale.

10. On or about September 12, 2024, Shamrock was contacted by Heritage Global Partners ("HGP") and was advised that HGP had purchased certain *de minimis* assets located on the Premises.

11. Shamrock has reviewed the Court's docket in this matter and has located no notice of *de minimis* asset sale identifying HGP as a purchaser. However, Shamrock reached out to the Debtors' Chief Restructuring Company, Huron Business Advisory ("Huron") who confirmed that HGP was indeed the purchaser of certain *de minimis* assets on the Premises. It also became clear to Shamrock that the Debtors likely intended to reject the Lease as of the end of September.

12. Subsequently, HGP raised the prospect of a short-term extension of the Lease at a significantly reduced rental rate. Shamrock declined this offer.

13. Shamrock coordinated through Debtors' counsel and Huron for a hand-over of keys and possession of the Premises due to past acts of vandalism, theft and damage related to

the homeless breaking into and attempting to set up residence when the Premises were left vacant and not secured. Shamrock sought to carefully coordinate with the Debtors to ensure that the Premises were secured and to mitigate damages.

14. The Premises were turned over to Shamrock's representative, Tony Lenzini ("Lenzini"), by Debtors on September 27, 2024. See Declaration of Tony Lenzini (the "Lenzini Dec.") attached as Exhibit "1" hereto and incorporated herein by reference.

15. After taking possession of the Premises, Lenzini performed an inspection of the Premises and took photographs. Lenzini Dec. ¶¶10-15 and Exh. "A".

16. Despite initial assurances from Huron that it planned to clear everything out by September 27, 2024 and leave the Premises as clean as possible, the Premises were left in complete disarray with substantial debris scattered. Furthermore, personal property was apparently abandoned at the Premises to such an extent it appears as though the Premises were ransacked. See Lenzi Dec. Exh. "A".

17. Additionally, there appears to be a substantial amount of hazardous waste that someone has apparently attempted to abandon to Shamrock. Lenzi Dec. ¶12 ("La Palma has been left in complete disarray. Shamrock now faces tens of thousands of dollars in cleanup costs, damage repairs, and what appears to me to be hazardous waste removal. I observed two 50-55 gallon drums where I believe one references oil and the other coolant. There appears to be oil in another funnel/stand device and various other bottles of chemicals on two tables (one of which is in the photos attached to my declaration.) There are also approximately 20 automotive sized batteries that have been left on site. My concern is that I do not know what chemicals have been left at La Palma. And, my estimate as to costs are based upon my decades of experience as a property owner representative.)

18. As further detailed in the Lenzini Declaration, the removal of property from the Premises was chaotic; debris was scattered; and substantial property was left behind, including property that falls well outside of the definition of property being abandoned by the Debtors in the Rejection Notice (i.e., "Miscellaneous personal property (office equipment, shelving, tables, chairs)"). Lenzini Dec. ¶¶ 8-15. Shamrock would presume and hope, moreover, that conduct of this sort would not be permitted under whatever agreement of sale may exist with HGB.

19. It appears that HGB or Debtors left a substantial amount of property at the Premises; hazardous waste was left behind; and either one or both engaged in conduct that resulted in the spread of debris that will cause Shamrock to bear unnecessary additional future costs. In addition to the hazardous waste, several clay models (potentially weighing hundreds or thousands of pounds), cabinets, tables, chairs and more litter the Premises.

20. On September 30, 2024, the Debtors filed the Rejection Notice, which states the Debtors' intention of rejecting the Lease effective as of September 27, 2024.

21. As noted above, the Rejection Notice also describes the property to be abandoned merely as "Miscellaneous personal property (office equipment, shelving, tables, chairs)" (the "Abandoned Property")

## OBJECTIONS / RESERVATION OF RIGHTS

22. Shamrock objects to the Rejection Notice first because the description of the Abandoned Property is inadequate and apparently incomplete. Personalty located on the Premises includes, in addition to office equipment and furniture: hazardous waste, appliances, papers, boxes, pictures, cabinets, compressed gas bottle, pallets, car parts, cabling, a large metal frame of some sort, clay models of cars and parts of cars, etc. See Lenzini Decl. ¶¶10-15 and attached photos.

5

23. The situation is made more complex because HGB apparently purchased some or all of the personal property on the Premises. Hence, Shamrock cannot identify who left what property at the Premises. This is particularly troubling for the hazardous waste. Additionally, Lenzini has been contacted and called by different parties requesting access to the Premises to recover property—suggesting that third parties have an interest in some of the property. Lenzini Dec. ¶16. Lenzini does not know some of the callers and questions how these unknown people obtained his cell phone number. Id. However, Lenzini is not allowing any property to leave the Premises pending further direction. Id. at ¶¶ 15-16.

24. Additionally, Fisker vehicles were left parked in the Premises parking lot.

25. It is not Shamrock's responsibility to determine who has title to the extensive personalty at the Premises as all of this property was placed on the Premises while the Premises were under the Debtors' exclusive control. If all of this property is uncontrovertibly the property of either the Debtors or HGB, then those parties should confirm same in writing and confirm that all such property is being abandoned (other than hazardous material as discussed below).

26. Shamrock also needs to be able to identify who left the hazardous waste and seeks clarity on its ability to consider the remainder of property left behind as abandoned so that it can remove and/or dispose of all personal property from the Premises immediately so that the Premises can be prepared for re-letting. The sooner that Shamrock removes and/or disposes of the abandoned property, the sooner it will be able to more effectively mitigate Shamrock's potentially significant rejection damages claim. Further, Shamrock will need to immediately contract with the appropriate vendors to address the mess and waste at the Premises and to liquidate and timely seek payment of its administrative claim. Lenzini Dec. ¶19.

27. Shamrock also objects to any abandonment by Debtors of hazardous waste on the Premises.

28. Under long-standing precedent, even a chapter 7 trustee may not abandon hazardous property. *Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 106 S. Ct. 755, 762 (1986) ("[t]he Bankruptcy Court does not have the power to authorize an abandonment without formulating conditions that will adequately protect the public's health and safety") *accord Dep't of Envtl. Ress. v. Conroy,* 24 F.3d 568, 569 (3d Cir. 1994) (Alito, J.) ("the Conroys could not have escaped their obligation to do so by abandoning the hazardous property in question.").

29. Here, Debtors, nor anyone, should be permitted to abandon hazardous property on the Premises.  See, e.g., Lenzini Dec. ¶12.  Debtors should remove this property immediately and dispose of same in accordance with applicable laws and regulations.

30. In filing this Objection, Shamrock does not waive but expressly reserves all of its rights without limitation including the right to file a request for payment of an administrative expense claim and a rejection damages claim.

Dated: October 4, 2024
Wilmington, Delaware

Respectfully submitted,

By: /s/ Christopher D. Loizides
Christopher D. Loizides (No. 3968)
**LOIZIDES, P.A.**
1225 King Street, Suite 800
Wilmington, Delaware 19801
Telephone: (302) 654-0248
Facsimile: (302) 654-0728
E-mail: loizides@loizides.com

and

Michael Nicastro
**NICASTRO & ASSOCIATES, P.C.**

26 Executive Park, Suite 250
Irvine, CA 92614
P: 949-534-6990
F: 949-590-4987
Email: mnicastro@nicastropc.com

*Counsel to Shamrock*