## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FISKER, INC., *et al.*,[1]<br><br>                Debtors. | Chapter 11<br><br>Case No. 24-11390 (TMH)<br><br>(Jointly Administered)<br><br>Re: D.I. 1283, 1296 |

### LIQUIDATING TRUSTEE'S REPLY TO GESTAMP AUTO COMPONENTS SALES TIANJIN CO. LTD.'s RESPONSE TO THE LIQUIDATING TRUSTEE'S OBJECTION TO PROOF OF CLAIM NO. 4097

Matthew Dundon, solely in his capacity as the Liquidating Trustee (the "**Liquidating Trustee**") of the Fisker Liquidating Trust (the "**Liquidating Trust**"), hereby files this Reply (the "**Reply**") in further support of the *Liquidating Trustee's Objection Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 to Proof Of Claim No. 4097 filed by Gestamp Auto Components Sales Tianjin Co., Ltd.* [D.I. 1283] (the "**Objection**"), and in response to the *Reply of Gestamp Auto Components Sales Tianjin Co. Ltd. to the Liquidating Trustee's Objection to the Proof of Claim* [D.I. 1296] (the "**Response**"), filed by Gestamp Auto Components Sales Tianjin Co., LTD. ("**Gestamp**"), and respectfully represents as follows:

### INTRODUCTION

1. In its Response, Gestamp: (i) provides no new evidence whatsoever - either documentary evidence or through testimony - that could reasonably support Claim No. 4097 as a valid Claim against the Debtors' estates;[2] and (ii) fails to rebut the evidence submitted by the

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of their respective employer identification numbers or Delaware file numbers, are as follows: Fisker Inc. (0340); Fisker Group Inc. (3342); Fisker TN LLC (6212); Blue Current Holding LLC (6668); Platinum IPR LLC (4839); and Terra Energy Inc. (0739). The address of the Debtors' corporate headquarters is 14 Centerpointe Drive, La Palma, CA 90623.

[2]     Capitalized terms not otherwise defined herein shall have the meanings assigned to them in the Objection.

Liquidating Trustee with the Objection (in the form of the Wright Declaration) that plainly demonstrates that the Debtors' estates have no liability to Gestamp. The inquiry should end there, full stop. On those bases alone, the Objection should be sustained, and Claim No. 4097 should be disallowed in full and expunged.

2.      In addition, from a legal perspective, Gestamp fails to articulate *any* cognizable legal arguments (or even cite a single case) in support of its claim that the Debtors' estates are somehow liable for the debts of non-Debtor affiliate Fisker (Shanghai) Motors, Ltd. ("**Fisker Shanghai**").

3.      Further, Gestamp does not even attempt to rebut the legal arguments laid out by the Liquidating Trustee in the Objection or to specifically distinguish any of the myriad cases and black-letter law cited in support of the Objection.

4.      In sum, the operative documents attached to Claim No. 4097 and to the Response, along with the Debtors' Books and Records, fail to give rise to liability for any Debtor entity in connection with Claim No. 4097. Additionally, it is black-letter law that the Debtors are not liable for the debts of non-Debtor subsidiaries, and Gestamp has failed to provide any evidence or cite any legal precedent that could establish otherwise. Just the opposite, in fact.

5.      Every single document in the record of this dispute, as well as the Debtors' Books and Records and all applicable law addressing the issue, point only to one inexorable conclusion: the Debtors' estates have no liability in connection with Claim No. 4097, and the same should be disallowed in full and expunged.

## **ARGUMENT**

6.      As noted in the Objection, the burden of proof for determining the validity of claims rests on different parties at different stages of the objection process. *See* Objection, ¶ 40 (citing *In*

*re Allegheny Int'l Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992)). When a claimant files a proof of claim, it is deemed to be an allowed claim unless an objection is interposed. *Id.* The filing of a proof of claim thus shifts the burden to the objector to prove why the claim should not be allowed. *Id*. Once the *prima facie* validity of a claim is rebutted by the objector, "it is for the claimant to prove his claim, not for the objector to disprove it." See Objection, ¶ 41 (citing *In re Kahn*, 114 B.R. 40, 44 (Bankr. S.D.N.Y. 1990) (internal citations omitted)).

7.      In the Objection, the Liquidating Trustee established that the documents attached to Claim No. 4097 fail in every way to give rise to liability for any Debtor entity. *See* Objection, ¶¶ 29-37. Simply stated, the attached documents show only that Fisker Shanghai was the liable party. *Id.*

8.      Next, the Liquidating Trustee established that under existing black-letter case law, no Debtor entity is liable for the debts owed by non-Debtor subsidiary Fisker Shanghai. *See* Objection*, ¶¶* 67-74 (citing, *e.g., United States v. Bestfoods*, 524 U.S. 51, 61, 118 S. Ct. 1876, 1884, 141 L.Ed.2d 43 (1998)).

9.      In the Response, Gestamp entirely fails to rebut these arguments. Specifically, Gestamp fails to produce any evidence, either in documentary form or through a declarant, which could support its claim that the Debtors' estates bear liability for the asserted debts. Furthermore, Gestamp fails to articulate any colorable legal arguments (or even cite a single case, for that matter) that might support its position, and similarly fails to distinguish any of the myriad legal precedent cited in the Objection.

   **A.      Gestamp provides no evidence that the Debtors are liable for the debt forming the basis of Claim No. 4097.**

10.      The documents attached to Claim No. 4097 and to the Response, including the Purchase Orders, the Invoices, and the Purchase Contract (along with Gestamp's own admissions)

plainly show that only non-Debtor Fisker Shanghai was the party bound by the agreements, not any of the Debtors. *See* Objection, ¶¶ 43-66.

11.     Since the Purchase Orders were the final manifestations of the agreements, they should be read as the operative contracts, or at least as supplementing the Purchase Contract. *See* UCC § 2-207. Regardless of which of these documents is operative, all lead to the same conclusion—non-Debtor Fisker Shanghai is the liable entity, not the Debtors.

12.     The Response includes no evidence to rebut the foregoing. Instead, Gestamp makes numerous claims, entirely without any evidentiary support, none of which lead to the conclusion that a Debtor entity is liable for the asserted debts.

13.     First, Gestamp's Response again *admits* from the outset that Fisker Shanghai was the party with whom Gestamp had an agreement. Gestamp states, "[a]t the request of Fisker Group, *Gestamp signed the Sales Contract with Fisker (Shanghai) Automotive Co., Ltd.*, an entity established by Fisker Group in the People's Republic of China." *See* Response, ¶ 2 (emphasis added). The balance of the Response includes no evidence to the contrary.[3]

14.     Further, the Response contains wide-ranging, untrue factual claims and bare-bones legal conclusions that bear no resemblance to reality and includes *absolutely no citations to evidence or to legal precedent.* Examples of the foregoing include:

- "it can be concluded that Fisker Group implemented a highly integrated supplier management system – that is, Fisker Group uniformly managed supplier admission, and then its subsidiaries in the countries where the suppliers were located specifically executed the procurement." *See* Response, ¶ 6

---

[3]     The "Factual Background" section of the Response gives a history of the claim from Gestamp's perspective, though it does not have any legal relevance. In short, Gestamp claims that the order and demand forecast information came through a system "established by Fisker Group," that Gestamp completed the order requirements, that Fisker Shanghai is an entity owned by the Debtors, and that Gestamp has a civil judgment in a Chinese court for a portion of the claim amount (though the Response conveniently omits that the defendant in that action was Fisker Shanghai, not any of the Debtors). *See* Response, ¶¶ 3-5; *see* Claim No. 4097. None of these factual assertions have any legal significance or can even be read to reasonably relate to any of Gestamp's muddy arguments.

- "[t]hese circumstances gave Gestamp reasonable grounds to believe that its transaction was conducted in an integrated group operating system led and controlled by Fisker Group, and its counterpart was, in substance, inseparable from Fisker Group." *Id.*

- "Fisker Group incorporated Gestamp into its unified, group-level 'supplier system' and authorized or permitted its subsidiaries to place purchase orders within this system, such conduct constitutes an implied authorization or apparent agency for the subsidiaries." *See* Response, ¶ 7.

- "Fisker Group's failure to fulfill its capital contribution obligation has improperly weakened Fisker Shanghai's solvency and directly harmed the interests of creditors, including Gestamp." *See* Response, ¶ 11.

- "Fisker Group's failure to fulfill its statutory capital contribution obligation to Fisker Shanghai, as an independent and specific misconduct, directly resulted in the insufficiency of Fisker Shanghai's assets to satisfy Gestamp's claims, and therefore Fisker Group shall bear direct liability for satisfaction of the claim to Gestamp . . ." *See* Response, ¶ 12.

15.    Strikingly, *not one* of these assertions is supported by any evidence. In fact, there is *not a single citation to evidence* in the "legal argument" section of the Response. Instead, Gestamp either makes factual assertions without citing to evidence, or makes unsupported claims such as "related records can be verified in the supplier system of Fisker Group" - which is simply untrue. *See* Response, ¶ 3.

**B.    The Contingent Nomination Letter has no legal relevance and provides no basis for the Debtors' alleged liability in connection with Claim No. 4097.**

16.    The only document attached to the Response is a July 27, 2021 letter purportedly sent from Nikhil Patel, a Fisker chassis buyer, to Gestamp, indicating that Gestamp has been selected "as a Serial Production Supplier for the Fisker Ocean Program" (the "**Contingent Nomination Letter**"). Gestamp's purpose in attaching the Contingent Nomination Letter to the Response is not explained with any clarity.

17.    In any case, the Contingent Nomination Letter does not constitute a contract with the Debtors as a matter of law.

5

18.    First, the Contingent Nomination Letter is not signed by the Debtors. *See* Contingent Nomination Letter. "[M]utual assent between parties is necessary for the formation of a contract." *Morales v. Sun Constructors, Inc.*, 541 F.3d 218, 221 (3d Cir. 2008). Despite having signature lines for both the Debtors and Gestamp, the document is only executed by Gestamp. *See* Contingent Nomination Letter. The Debtors signature line is not executed. *Id.*

19.    Second, the Contingent Nomination Letter lacks consideration, as neither party is required to take any action as a requirement of the letter. *See* Contingent Nomination Letter. "'Consideration,' is something of value given in return for a performance or a promise of performance that is bargained for." 17 CJS Contracts § 115. "It is a fundamental tenet of contract law that a valid contract requires good or valuable consideration." *Haft v. Dart Group Corp.*, 841 F. Supp. 549, 573 (D. Del. 1993) (citations omitted). The Contingent Nomination Letter includes pricing quotes, but does not require "performance or a promise of performance." 17 CJS Contracts § 115. It merely memorializes that Gestamp has been selected to provide parts at some point in the future.

20.    Moreover, Gestamp admits that it "signed the Sales Contract with Fisker (Shanghai) Automotive Co., Ltd.," so Gestamp cannot credibly claim that the Contingent Nomination Letter is the operative agreement. *See* Response, ¶ 2.

**C.    The Wright Declaration is uncontroverted and demonstrates that the Debtors are not liable in connection with Claim No. 4097.**

21.    Furthermore, the uncontroverted Wright Declaration, submitted as evidence in support of the Objection, establishes that: (i) Claim No. 4097 is unable to be reconciled with the Debtors' Books and Records; and (ii) the Debtors' Books and Records do not reflect the existence of Claim No. 4097 or of any amount owing to Gestamp. *See* Wright Declaration, ¶¶ 5-6 .

22.     In that regard, the Debtors' Books and Records do not contain any contractual guarantees (either direct or indirect) that could give rise to liability by the Debtors on behalf of Fisker Shanghai. *See* Wright Declaration.

23.     Gestamp has the burden of proving that the Debtors are liable for the debts alleged in Claim No. 4097. It did not do so. The Response is beset by a complete and fatal lack of evidence, it makes no attempt to tie any factual assertions to any specific pieces of evidence, and it fails to colorably rebut any of the assertions contained in the Wright Declaration.

24.     Simply put—Gestamp has not established an evidentiary basis on which the Court could rule against the Liquidating Trustee.

**D.      Gestamp's quasi-legal arguments do not give rise to liability for the Debtors in connection with Claim No. 4097.**

25.     Gestamp's "legal arguments" are comprised of quasi-legal theories which lack citations and do not reflect basic concepts of statutory or case law. In any case, Gestamp's arguments do not overcome the fact that no Debtor entity is responsible for the debts of non-Debtor Fisker Shanghai.

**i.      Gestamp's arguments regarding its subjective understanding of the agreements do not give rise to liability for any Debtor entity.**

26.     First, Gestamp argues that it had "reasonable grounds to believe that Fisker Group is one of the parties obligated to pay Gestamp's supplier claims," and those grounds should create liability for the Debtors. *See* Response, § A, ¶¶ 6, 7.

27.     However, Gestamp's subjective beliefs have no bearing on the issues at bar. "The parol evidence rule generally mandates that when a 'written contract is clear and unequivocal, its meaning must be determined by its contents alone.'" *United States v. Saferstein*, 673 F.3d 237,

7

242 (3d Cir. 2012) (quoting *Amer. Eagle Outfitters v. Lyle & Scott Ltd.,* 584 F.3d 575, 594 (3d Cir. 2009)).

28.     Each of the relevant agreements—the operative Purchase Orders, the Invoices, and the overarching Purchase Contract—unequivocally state that the counterparty is Fisker Shanghai. *See* Claim No. 4097; *see also*, Objection, ¶¶ 43-60.

29.     As there is no ambiguity, the meanings of these agreements should be determined on their faces, which state that the counterparty is Fisker Shanghai, not a Debtor entity.

30.     Even if the parol evidence rule was not operative or Gestamp's subjective views were relevant, Gestamp's misstating of the unambiguous contract terms is not "reasonable." The operative agreements each state that Fisker Shanghai is the contract counterparty, not the Debtors. *See* Claim No. 4097. While Gestamp's subjective views are not legally relevant, it is still not "reasonable" to believe that the relevant counterparty was any of the Debtors.

31.     This argument utterly fails to establish that the Debtors' estates are liable for the asserted debts in connection with Claim No. 4097.

### ii. Gestamp's argument that the Debtors are liable for Fisker Shanghai's debts based on an alleged failure to make shareholder contributions is unsupported by law.

32.     Utilizing a quasi-legal argument unsupported by any legal authority, Gestamp argues that:

> [w]hen a company is insolvent, its assets—including the unfulfilled capital commitments of shareholders—shall be regarded as a "trust fund" established for the benefit of all creditors. A shareholder's failure to fulfill the capital contribution obligation constitutes an infringement upon the trust funds, and the creditor has the right to directly pursue the shareholder for the un-contributed portion.

*See* Response, ¶ 7. Despite being at the core of Gestamp's argument, Gestamp provides no citation to any legal authority. This argument also does not reflect general principles of statutory or case law.

33.    The Debtors and non-Debtor Fisker Shanghai are different corporations—legally separate entities which are not responsible for each other's debts. As noted in the Objection, "[i]t is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." Objection, ¶ 69 (citing *United States v. Bestfoods*, 524 U.S. 51, 61, 118 S. Ct. 1876, 1884, 141 L.Ed.2d 43 (1998)). Similarly, "mere ownership of a subsidiary does not justify the imposition of liability on the parent." *Pearson v. Component Technology Corp.*, 247 F. 3d 471, 484 (3d Cir. 2001). Disregarding entities' separateness is a "notoriously difficult" burden. *See Pearson*, 247 F. 3d at 485.

34.    In the face of this heavy burden, Gestamp cites no law and produces no evidence. In fact, its principal argument is completely nonsensical—an argument regarding capital contributions to other entities and "trust fund[s]," for which Gestamp provides no statutory or case law authority. *See* Response, § B; ¶¶ 9-12. These statements do not appear to have any basis in American law—corporations do not have required capital contributions to subsidiaries or affiliates.

35.    Gestamp also confuses its burden of proof. Gestamp claims that "Fisker Group has the obligation of evidence discovery to prove to the Court its actual fulfillment of the shareholder's capital contribution obligation to Fisker Shanghai." *See* Response, ¶ 10. However, once the *prima facie* validity of a claim is rebutted by the objector, "it is for the claimant to prove his claim, not for the objector to disprove it." *Kahn*, 114 B.R. at 44 (internal citations omitted).

36. As the Objection rebutted the *prima facie* validity of Claim No. 4097, Gestamp has the burden of proving its validity. Gestamp must show why the Debtors are liable for contracts attributable to non-Debtor Fisker Shanghai. Gestamp has not met this burden, and cannot shift it to the Liquidating Trustee.

37. Gestamp also asserts that "there are exceptions to the cases cited by the Liquidating Trustee," and then cites no case law or other authorities for these supposed exceptions. *See* Response, ¶ 10.

38. Finally, Gestamp states that Fisker Shanghai is in bankruptcy in China and that the Liquidating Trustee "has an obligation to recover" property which the Debtors allegedly owe to Fisker Shanghai. *See* Response, ¶ 11.

39. The Liquidating Trustee has no legal duty to Fisker Shanghai and there is absolutely nothing in the record to support such an outlandish statement. As stated in the Plan, the Liquidating Trust was established "***for the sole purpose*** of liquidating and distributing the Liquidating Trust Assets" and "distributing any such assets pursuant to the Plan." *See* Plan, Art. VIII-B-1. Fisker Shanghai is not a beneficiary of the Liquidating Trust, and the Liquidating Trustee cannot recover funds on its account.

40. Similarly, the Liquidating Trustee's duties are such that he "***shall*** act in the best interests of all beneficiaries of the Liquidating Trust and in furtherance of the purpose of the Liquidating Trust." *See* Plan, Art. VIII-B-1. The Liquidating Trustee has no duties arising under Chinese bankruptcy law.

41. In summary, Gestamp's claims have no grounding in any legal authority, and Gestamp provides no citation to any. The Liquidating Trustee's Objection establishes that the relevant agreements are between Gestamp and Fisker Shanghai, and not any Debtor entity, and

that the Debtors' estates are not responsible for the debts of non-Debtor Fisker Shanghai. Gestamp's Response fails to rebut the Liquidating Trustee's arguments. The Court should rule in the Liquidating Trustee's favor and disallow in full and expunge Claim No. 4097.

## RESERVATION OF RIGHTS

42.     The Liquidating Trustee expressly reserves the right to amend, modify or supplement this Reply and to file additional objections on any applicable grounds to Claim No. 4097 or any other Claims (filed or not) which may be asserted against the Debtors. Should one or more of the grounds of objection stated in this Objection be dismissed, the Liquidating Trustee reserves his rights to object on other stated grounds or on any other grounds that the Liquidating Trustee discovers during the pendency of these Chapter 11 Cases.

## CONCLUSION

43.     Accordingly, the Liquidating Trustee respectfully requests that this Court: (i) enter the Proposed Order disallowing in full and expunging Claim No. 4097; and (ii) grant such other and further relief as is just and proper.

Dated:  May 6, 2026
Wilmington, Delaware

**COLE SCHOTZ P.C.**

   */s/ Justin R. Alberto*
Justin R. Alberto (No. 5126)
Melissa M. Hartlipp (No. 7063)
500 Delaware Avenue, Suite 600
Wilmington, DE 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117
Email:    jalberto@coleschotz.com
               mhartlipp@coleschotz.com

-and-

11

**ASK LLP**
Jason C. DiBattista (admitted *pro hac vice*)
Brigette G. McGrath (admitted *pro hac vice*)
William H. Thomas (admitted *pro hac vice*)
Rebecca L. Stark (admitted *pro hac vice*)
2600 Eagan Woods Drive, Suite 400
St. Paul, Minnesota 55121
Telephone: (651) 406-9665
Facsimile: (651) 406-9676
Email:    jdibattista@askllp.com
          bmcgrath@askllp.com
          wthomas@askllp.com
          rstark@askllp.com

-and-


Marianna Udem (admitted *pro hac vice*)
60 East 42nd Street, 46th Floor
New York, New York 10165
Telephone: (212) 267-7342
Facsimile: (212) 918-3427
Email:    mudem@askllp.com

*Co-Counsel to the Liquidating Trustee*

12